GRAVES, Presiding Justice,
Dissenting.
¶ 65. In today’s opinion, the majority of this Court finds that Price failed to substantially comply with the statutory requirements of Mississippi Code Section 11 — 46—11 (1) — (2) (Rev.2002), which is part of the Mississippi Tort Claims Act (MTCA), and Mississippi Code Section 15-1-36(15) (Rev.2003). I have previously stated my disagreement with this Court’s insistence on strictly applying the requirements set out in Sections 11-46-11(1) and 15-1-36(15). See Bunton v. King, 995 So.2d 694, 697-98 (Miss.2008) (Graves, J., dissenting); Arceo v. Tolliver, 949 So.2d 691, 698-704 (Miss.2006) (Graves, J., dissenting). In Fairley v. George County, 871 So.2d 713, 718-28 (Miss.2004) (Easley, J., concurring), I joined Justice Easley’s opinion, in which he concurred in result only, finding that the plaintiff had substantially complied with Section 11-46-11(2), though the majority held that she had not complied. In light of the facts of this case, the legal precedent, and the rationale behind the statutory requirements, I am compelled to restate my disagreement with this Court’s application of the requirements set out in Sections ll-46-ll(l)-(2) and 15-1-36(15).
I.
¶ 66. In this case, the majority recognizes that this Court held in Lee v. Memorial Hospital at Gulfport, 999 So.2d 1263, 1266-67 (Miss.2008), that only substantial compliance is required with respect to the requirements set out in Section 11-46-11(2). Maj. Op. ¶ 20. However, the majority finds that the notices of claim sent by Nina Price (Price) failed to substantially comply with Section 11-46-11(2). Maj. Op. ¶ 22. Because the notices of claim do substantially comply with the requirements in Section 11-46-11(2), I respectfully dissent.
¶ 67. Section 11-46-11(2) requires that a notice of claim set out seven categories of information: 1) the circumstances which brought about the injury; 2) the extent of the injury; 3) the time and place the injury occurred; 4) the names of all persons known to be involved; 5) the amount of money damages sought; 6) the residence of the person making the claim at the time of the injury; and 7) the residence of the person making the claim at the time the notice is filed. Miss.Code Ann. § 11-46-11(2).
¶ 68. The notices of claim at issue, which were dated August 30, 2004, and were delivered via certified mail, stated:
I am writing this letter as an official notice that a formal complaint will be filed against you on behalf of our client, Albert Bruce Price, Jr., who has suffered injuries and sustained damages as a result of the negligent medical treatment that he received at your facility located in Cleveland, Mississippi.
Mr. Price had been a patient of yours and your predecessors for well over twenty years. Beginning in 2001, Mr. Price began weakening especially in his lower extremities. His health continually worsened over the next three years and although he was partaking in physical therapy and occupational therapy, he was not improving. He slowly went from losing his balance, to needing a cane, to needing a walker, to needing a wheelchair, to basically being bed bound. At no time was an MRI or CT scan performed on Mr. Price to determine any potential neurological problems. In the end when the MRI and/or CT scan were executed, a rather large pituitary *532 tumor which had been growing for several years was discovered. After consulting with specialists from several states, the family and Mr. Price learned that not only was the tumor inoperable but that radiation was not an option. Less than two weeks after his last consultation with a neurologist concerning his health, Mr. Price died on or about August 14, 2004.
Mr. Price’s family has been forced to alter their lifestyle due to the deterioration of his health and his subsequent death. Mr. Price had to limit his former daily activities. Due to his physical condition caused by the pituitary tumor, Mr. Price could no longer engage in his usual day-to-day activities once exhibited such as: walking, playing with his grandchildren, driving, working on his cars and entertaining crowds of people and his family with his talent of playing the keyboard, singing and just plain roc-kin’ n’ rollin’. Prior to his health problems caused by the undiagnosed tumor, Mr. Price was very involved in the community and with his family.
For the foregoing reasons, we will be filing a complaint on behalf of our client for past, present and future medical expenses, pain and suffering, mental and emotional distress, and loss of society. However, if you are willing to discuss the settlement of this matter prior to the initiation of a lawsuit, please do not hesitate to contact us in a timely manner. If we do not hear from you, we will proceed by filing a complaint against you on behalf of our client.
¶ 69. The majority concludes that the notices of claim failed to substantially comply with Section 11-46-11(2). Maj. Op. ¶22. I disagree with this conclusion because the notices of claim provided sufficient notice to the defendants of the claim and they provided all seven categories of information required pursuant to Section 11-46-11(2).

The Circumstances Which Brought About the Injury

¶ 70. The notices of claim clearly described the circumstances which brought about Albert Price’s injury. The first sentence of the notices of claim stated that he suffered injuries as a result of negligent medical treatment at the defendants’ medical facilities. The notices of claim further pointed out that Albert Price had been a patient of the defendants for more than twenty years and that, despite the fact that his condition began worsening in 2001, “[a]t no time was an MRI or CT scan performed on Mr. Price to determine any potential neurological problems.” As a consequence, the notices stated, Albert Price’s tumor was not discovered until it was inoperable and unresponsive to radiation therapy. Thus, the notices of claim met the first requirement set out in Section 11-46-11(2) by adequately describing the circumstances which brought about the injury.

The Extent of the Injury

¶ 71. As for the extent of the injury, the notices of claim made abundantly clear that the claim was that Albert Price had suffered from the deterioration of his physical condition, which ultimately led to his death. The notices described the progression of his loss of mobility: “[h]e slowly went from losing his balance, to needing a cane, to needing a walker, to needing a wheelchair, to basically being bed bound.” The third paragraph of the notices of claim provided further details regarding the specific ways in which Albert Price’s worsening physical condition caused him injury. Therefore, the second category of information set out in Section 11-46-11(2) was also provided in the notices of claim.

*533
The Time and Place the Injury Occurred

¶72. The notices of claim specifically-stated that Albert Price “suffered injuries and sustained damages as a result of the negligent medical treatment that he received at your facility located in Cleveland, Mississippi.” (Emphasis added.) Thus, there is no question that the claim was that the injury occurred at the defendants’ medical facilities in Cleveland, Mississippi. The notices of claim also stated that Albert Bruce Price, Jr. was a patient at the defendants’ medical facilities for more than twenty years. Price’s primary allegation was that the defendants should have diagnosed the pituitary tumor that caused Albert Price’s death before the tumor became inoperable and unresponsive to radiation therapy. The notices of claim clearly stated that the tumor “had been growing for several years.” Therefore, the time the injury occurred spanned the period of time from the formation of the tumor until Albert Price’s death. The notices of claim contained sufficient information for the defendants to draw this common-sense conclusion. In addition, the notices also stated that Albert Price’s health began to deteriorate in 2001. Thus, contrary to the majority’s conclusion, the notices of claim sufficiently identified the time the injury occurred. Maj. Op. ¶ 21.

The Names of All Persons Known to be Involved

¶ 73. Section 11-46-11(2) only requires that a notice of claim specify “the names of all persons known to be involved.” Miss. Code Ann. § 11-46-11(2) (emphasis added). This Court underscored in Lee that only “all persons known to be involved” need to be identified in a notice of claim. Lee, 999 So.2d at 1267. If Price did not know the identity of all persons involved, then Section 11-46-11(2) did not require that she provide their names since she did not know all persons who were involved. See Miss.Code Ann. § 11-46-11(2). I note that the defendants easily could have consulted Albert Price’s medical file and their records to determine which of its employees were involved in his treatment. Therefore, I disagree with the majority’s conclusion that Price failed to comply with Section 11-46-11(2) because “there also was no mention of the names of the persons involved.” Maj. Op. ¶ 21.

The Amount of Money Damages Sought

¶ 74. Although the notices of claim did not specify the amount of money damages sought, they did include a list of the types of damages Price sought. Presumably, the Legislature included this requirement in Section 11-46-11(2) so that defendants would have more information regarding the nature of the claim in order to give them a general sense of whether settlement is desirable, and if so, the range of potential settlement amounts. Listing the various types of damages claimed adequately serves this purpose. Since Price provided a detailed list of the types of damages sought, she substantially complied with this statutory requirement. Therefore, I disagree with the majority’s finding that the notices of claim did not satisfy this requirement set out in Section 11-46-11(2). Maj. Op. ¶ 21.
¶ 75. I am compelled to add, however, that I find the mere existence of this requirement, and this Court’s enforcement of it, to be highly problematic. Requiring claimants to indicate the amount of damages sought in their notice of claim serves no purpose other than to create yet another hurdle in an effort to thwart viable claims against governmental entities and medical providers. Mississippi Rule of Civil Procedure 8(a) does not require plaintiffs to specify a monetary amount of damages in a pleading setting forth a claim for relief and only requires that a plaintiff *534 include “a demand for judgment for the relief to which he deems himself entitled.” Miss. R. Civ. P. 8(a)(2). More pertinent to this case is the fact that a plaintiff pursuing a negligence claim against medical providers is statutorily prohibited from specifying a damages amount in his or her complaint or counterclaim. Miss.Code Ann. § 11-1-59 (Rev.2002). Section 11 — 1— 59 states, in relevant part:
In any action at law against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor to recover damages based upon a professional negligence theory, the complaint or counterclaim shall not specify the amount of damages claimed, but shall only state that the damages claimed are within the jurisdictional limits of the court to which the pleadings are addressed....
Miss.Code Ann. § 11-1-59 (emphasis added). Thus, individuals pursuing claims against providers for medical negligence are not even permitted to specify the amount of money damages sought in their complaint or counterclaim, but are required to specify the amount of money damages sought in their notice of claim. This is absurd. There is no rational explanation for why claimants must specify a damages amount in their notice of claim when they are not permitted, much less required, to do so in their formal complaint or counterclaim.
¶ 76. Furthermore, the exact amount of money damages sought may be very difficult to calculate and may, in fact, require consultation with experts. Thus, it can be extremely burdensome for claimants to specify an amount of damages in their notice of claim — especially given the fact that they need not determine a specific damages amount to include in their complaint or counterclaim. In the instant case, Price is seeking damages for, inter alia, pain and suffering, mental and emotional distress, and loss of society. It would have been extraordinarily difficult for her to determine a specific amount of money damages for these types of damages in her notices of claim, which were required to be sent before litigation was commenced, and which were sent only approximately two weeks after her husband’s death.

The Residence of the Person Making the Claim at the Time of the Injury and at the Time the Notice is Filed

¶ 77. The majority finds that the notices of claim did not include the claimant’s residence at the time of the injury or at the time the notice is filed. Maj. Op. ¶ 21. In all likelihood, Section 11-46-11(2) requires that a notice of claim include the claimant’s address at the time of the injury is so that defendants can identify the claimant. In this case, Albert Price had been a patient at the defendants’ facilities for more than twenty years. Also, his full name — Albert Bruce Price, Jr. — was provided in bold-face type in the subject line of the notices of claim and in the first sentence of the substance of the notices. His full name was more than adequate in assisting the defendants in identifying him. Furthermore, Albert Price’s address at the time of injury was most likely provided to the defendants at least once during the twenty-year period during which they treated him and was readily available in the defendants’ records. The defendants were put on sufficient notice of which of their patients was pursuing this claim against them.
¶ 78. As for the requirement that a notice of claim include the claimant’s address at the time the notice is filed, this information is most likely required so that defendants can contact the claimant in an effort to investigate or settle the claim. Here, Price was making a claim through *535 counsel, whose office address, office phone number, and office website were provided in the notices of claim. Notably, it would have been a violation of Mississippi Rule of Professional Conduct 4.2[5] for a lawyer representing a defendant to attempt to contact a claimant directly when it is known that the claimant is represented by counsel. See Miss. R. Profl Conduct 4.2. Accordingly, the notices of claim invited the defendants to “contact us,” clearly referring to counsel, whose signature followed shortly thereafter, and his law firm. The notices of claim provided sufficient information to the defendants such that they could have identified Albert Price and contacted Price’s counsel regarding the claim.
¶ 79. This conclusion is consistent with this Court’s prior case law. In Thornburg v. Magnolia Regional Health Center, 741 So.2d 220, 22B (Miss.1999), this Court addressed the defendant’s argument that the plaintiffs notice of claim was deficient for failure to provide her address. This Court stated that
notwithstanding Thornburg’s failure to include her address in her letter, her notice letter nevertheless informed Magnolia of the substance of her claim and provided Magnolia with sufficient information to conduct a proper investigation .... [T]he letter provided the address of the attorney handling the claim, and Magnolia could have presumably obtained the information regarding Thorn-burg’s residence by conducting a brief investigation.
Id. In Powell v. City of Pascagoula, 752 So.2d 999, 1005 (Miss.1999), this Court found that the plaintiff had substantially complied with Section 11-46-11(2) despite her failure to include her address, stating that:
The City suffered no actual prejudice as a result of Powell’s failure to include her own address, where she was represented by an attorney at the time and his address was included. Furthermore, the City was on actual notice of Powell’s address on the date of the incident, in that the police officer who reported the incident included Powell’s address on the Uniform Accident Report.
Because Powell’s Notice bore the address of her attorney, we find this to be substantial compliance with the statute.
¶ 80. As this Court recognized in both Thornburg and Powell, as a practical matter, it is inconsequential that a claimant failed to include his or her residence at the time of the injury and the time the notice is filed when the defendants can easily access the claimant’s residence at the time of the injury and can contact the claimant’s attorney, whose contact information is provided.
¶ 81. In the instant case, it is evident that Price provided all seven categories of information. The information provided in the notice was sufficient to meet the purpose of the statute by enabling the defendants to investigate and evaluate Price’s claim. Therefore, I would find that Price’s notices of claim substantially complied with Section 11-46-11(2). I note that this Court found substantial compliance in Reaves ex rel. Rouse v. Randall, 729 So.2d 1237, 1240 (Miss.1999), where the notice of claim sent to the governmental entity included only the persons involved in the accident, when the accident occurred, where the accident occurred, and what vehicles were involved. In Carr v. Town of *536 Shubuta, 733 So.2d 261, 263 (Miss.1999), this Court stated:
The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied.
Thus, a notice is sufficient if it substantially complies with the content requirements of the statute. What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. In general, a notice that is filed within the [requisite] period, informs the municipality of the claimant’s intent to make a claim and contains sufficient information which reasonable [sic] affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it.
Id. at 263 (emphasis added). This Court further stated that, “[e]ven though this Court now finds substantial compliance to be sufficient, we stress that substantial compliance is not the same as, nor a substitute for non-compliance.” Id. at 265. This Court has since unfairly and unreasonably cited that statement as support for finding noncompliance where claimants have, in fact, substantially complied. See, e.g., Parker v. Harrison County Bd. of Supervisors, 987 So.2d 435 (Miss.2008); Fairley v. George County, 871 So.2d 713 (Miss.2004); Harris v. Miss. Valley State Univ., 873 So.2d 970 (Miss.2004).
¶ 82. I write today to denounce the manipulation of “substantial compliance” into a mere judicial illusion and to implore the application of the statute as intended— to provide notice of a claim — and not to prohibit the pursuit of claims. Based on the statutory requirements and the applicable caselaw, I would find that Price substantially complied with the notice requirements set out in Section 11-46-11(2).
II.
¶ 83. I also write to express my disagreement with the majority’s reliance on University of Mississippi Medical Center v. Easterling, 928 So.2d 815 (Miss.2006), and Pítalo v. GPCH-GP, Inc., 933 So.2d 927 (Miss.2006), for the proposition that Mississippi Code Sections 11-46-11(1) and 15-1-36(15) should be strictly construed and applied. Maj. Op. ¶ ¶ 16-19.

The Ninety-Day-Notice Requirement

¶ 84. Mississippi Code Section 11-46-11(1), which is part of the Mississippi Tort Claims Act (MTCA), states, in relevant part:
After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.
Miss.Code Ann. § 11-46-11(1). Thus, Section 11^46-11(1) requires that, when suing a state entity, a plaintiff must file a notice of claim with the chief executive officer of the governmental entity ninety days prior to maintaining an action on a claim for injury. Miss.Code Ann. § HAt6-ll(l).[6] This Court has long applied a substantial- *537 compliance standard when reviewing cases involving the ninety-day-notice requirement. See, e.g., Wright v. Quesnel, 876 So.2d 862, 366 (Miss.2004); Davis v. Hoss, 869 So.2d 397, 401-02 (Miss.2004); Jones ex rel. Jones v. Miss. Sch. for the Blind, 758 So.2d 428, 429 (Miss.2000), overruled hy Easterling, 928 So.2d 815; Jackson v. City of Wiggins, 760 So.2d 694, 695-96 (Miss.2000), overruled by Easterling, 928 So.2d 815; Leflore County v. Givens, 754 So.2d 1223, 1232 (Miss.2000), overruled by Easterling, 928 So.2d 815; Jackson v. City of Booneville, 738 So.2d 1241, 1246 (Miss. 1999), overruled by Easterling, 928 So.2d 815; City of Pascagoula v. Tomlinson, 741 So.2d 224, 226-27 (Miss.1999), ovemded by Easterling, 928 So.2d 815. This Court has also long held that a stay for the remainder of the ninety-day period is the sole remedy available to a defendant when the plaintiff fails to substantially comply with the ninety-day-notice requirement. See, e.g., Jones, 758 So.2d at 429 (stating that a stay was the defendant’s sole remedy for the plaintiffs failure to comply with the ninety-day waiting period); City of Wiggins, 760 So.2d at 696 (same); City of Booneville, 738 So.2d at 1246 (finding that the proper remedy for failure to comply with the ninety-day waiting period is a stay); Tomlinson, 741 So.2d at 228 (same).
¶ 85. It was not until Davis that a majority of this Court abandoned its earlier position regarding the remedy for noncompliance with the ninety-day-notice requirement. Davis, 869 So.2d at 401-02. And it was not until Easterling that a majority of this Court decided, in a drastic departure from the legal precedent, to declare that the ninety-day-notice requirement would be strictly enforced. Easter-ling, 928 So.2d 815, 819-20 (Miss.2006).
¶ 86. The majority opinion in Easter-ling is rife with incoherence and inconsistency, which becomes especially clear when it is considered in the context of the relevant precedent and Section 11-46-11(1). The Easterling majority cited Davis and Wright in an attempt to demonstrate that strict compliance was consistent with the legal precedent. Id. at 818-20. However, both Davis and Wright applied a substantial-compliance standard to the ninety-day-notice requirement. Davis, 869 So.2d at 401-02; Wright, 876 So.2d at 366. Furthermore, the majority opinions in Davis and Wright were themselves deviations from this Court’s caselaw establishing that a stay is the sole remedy for a plaintiffs failure to substantially comply with the ninety-day-notice requirement. See, e.g., Jones, 758 So.2d at 429; City of Wiggins, 760 So.2d at 696; City of Boone-ville, 738 So.2d at 1246; Tomlinson, 741 So.2d at 228. The majorities in Davis and Wright found that the plaintiffs had not substantially complied with the ninety-day-notice requirement because they had not complied at all. Davis, 869 So.2d at 401-02; Wright, 876 So.2d at 366. The majorities then set out a new remedy for defendants when plaintiffs fail to comply at all with the ninety-day-notice requirement— dismissal of the case. Davis, 869 So.2d at 401-02; Wright, 876 So.2d at 366.
¶ 87. Even more troubling is that, in order to support its abrupt shift from substantial compliance to strict compliance, the Easterling majority mischaracterized what had been set out in Davis and Wright. Easterling, 928 So.2d at 818. The Easterling majority claimed that “in 2004, this Court announced in Davis, 869 So.2d at 402, [that] it was no longer the defendant’s duty to request a stay or face a waiver of the ninety days when the plaintiff failed to comply with the statutory notice period.” Id. However, the majority in Davis never stated that it was no longer the defendant’s duty to request a stay for the ninety-day period when the plaintiff failed to comply with the statutory *538 notice period. See Davis, 869 So.2d at 401-02. In fact, the majority in Davis never addressed whether or not the defendants should have requested a stay. Davis, 869 So.2d at 401-02. The Davis majority found that the plaintiff failed to substantially comply with the ninety-day-notice requirement by filing the notice of claim on the same day as the complaint. Id. at 402. The majority then concluded that the plaintiff had failed to comply at all with the ninety-day-notice requirement, clearly stating that “ ‘substantial compliance is not the same as, nor a substitute for, non compliance.’ ” Davis, 869 So.2d at 402 (quoting Carr v. Town of Shubuta, 733 So.2d 261, 265 (Miss.1999)). The Easter-ling majority also cited Wright in support of applying a strict-compliance standard, but failed to mention that the majority in Wright had also applied a substantial-compliance standard to the ninety-day-notice requirement. Easterling, 928 So.2d at 818-19; Wright, 876 So.2d at 366.
¶ 88. The Easterling majority went on to state that “[tjhere is no doubt the language of Davis and Wnght is in conflict with our prior rulings in which we have called for the defendant to request a stay of the proceedings.” Easterling, 928 So.2d at 819. As stated above, Davis and Wright were already a departure from the well-established policy that a stay was the sole remedy for noncompliance with the ninety-day-notice requirement. Nevertheless, this did not justify this Court’s sudden adoption of a strict-compliance standard in Easterling in light of this Court’s precedent. See, e.g., Wright, 876 So.2d at 366 (stating that this Court applies a substantial-compliance standard); Davis, 869 So.2d at 401-02 (same); Jones, 758 So.2d at 429 (same); City of Wiggins, 760 So.2d at 696 (same); Givens, 754 So.2d at 1231 (same); City of Booneville, 738 So.2d at 1243-44, 1246 (same); Tomlinson, 741 So.2d at 226-27 (same). The Easterling majority claimed that Davis and Wright “served to shift the responsibility to correct the plaintiffs failure to follow the ninety-day notice requirement from the defendant to the plaintiff,” although it was forced to concede that this was “not explicitly stated in Davis and Wnght.” Easter-ling, 928 So.2d at 819.
¶ 89. The Easterling majority also stated that “[i]n order to make it perfectly clear to all that strict compliance is required, as stated in Davis and Wright, we hereby overrule Tomlinson and its progeny.” Easterling, 928 So.2d at 819-20. The reason the majority had to make this “perfectly clear to all” was because it was not at all clear that the majority opinions in Davis and Wright stated what the Easterling majority claimed they stated. Again, neither Davis nor Wright applied a strict-compliance standard to the ninety-day-notice requirement. Davis, 869 So.2d at 401-02; Wright, 876 So.2d at 366. Thus, it was only by misrepresenting what was stated in prior decisions that the Easterling majority was able to justify its leap from substantial compliance to strict compliance.
¶ 90. This Court has noted before that the purpose of the ninety-day-notice requirement is to notify the defendant of the plaintiffs claim so that the defendant can use the ninety days to investigate the claim and pursue any avenues available to settle the dispute before the plaintiff seeks formal legal redress in the courts. See, e.g., City of Booneville, 738 So.2d at 1243-44; Givens, 754 So.2d at 1231. This Court has held:
The purpose of the [Mississippi Tort Claims] Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon as possible *539 when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies ....
In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provisions of the Act is sufficient.
City of Booneville, 738 So.2d at 1243-44 (quoting Reaves ex rel. Rouse v. Randall, 729 So.2d 1237, 1240 (Miss.1999)). As noted above in Section I, this Court has also stated:
The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied. Thus, a notice is sufficient if it substantially complies with the content requirements of the statute.
Givens, 754 So.2d at 1231 (quoting Carr, 733 So.2d at 263). If the defendant decides not to take advantage of the ninety-day period to investigate the plaintiffs claim and pursue settlement options, then there is no logical reason for delaying the formal initiation of the lawsuit in the courts. It does not promote judicial economy to enforce a ninety-day waiting period and deny the plaintiff the possibility of redress for ninety days when neither party wishes to wait for the case to proceed. That is why the most sensible penalty for failing to comply with the ninety-day-notice requirement is for the court to grant a stay for the remainder of the ninety-day period, at the defendant’s request. If the defendant does not wish to have the benefit of the full ninety-day period before the plaintiff files suit in court, then the plaintiff should be allowed to file a formal complaint before the ninety-day period expires, and the defendant should be barred from objecting to the plaintiffs noncompliance with the ninety-day-notice' requirement.
¶ 91. Given our legal precedent and the most rational interpretation of Section 11-46-11(1), it becomes clear that Easterling was an aberration in our jurisprudence regarding the ninety-day-notice requirement. The ninety-day-notice requirement in Section 11-46-11(1) should not be reviewed with a strict-compliance standard. To the extent Section 11-46-11(1) requires strict compliance with the ninety-day-notice requirement, it unconstitutionally deprives plaintiffs of their right to seek redress for their legal claims in our courts. See Miss. Const, art. 3, § 24; see Bunton v. King, 995 So.2d 694, 697-98 (Miss.2008) (Graves, J., dissenting). For this Court to strictly construe and then strictly apply the requirement that plaintiffs with claims against a specific set of defendants — governmental entities — give ninety days’ notice of their claims unfairly protects these defendants and unfairly burdens these plaintiffs by hindering their ability to pursue their claims in court. It adds yet another hurdle to the process of seeking legal redress against this separate class of defendants. This is unconstitutional. See Miss. Const, art. 3, § 24; see also Bunton, 995 So.2d at 697-98 (Graves, J., dissenting). To the extent that Section 11 — 46— 11(1) does not require strict compliance, this Court’s application of a strict-compliance standard is unconstitutional for the same reasons.

The Sixty-Day-Notice Requirement

¶ 92. Mississippi Code Section 15-1-36(15) states, in relevant part: “No action based upon the health care provider’s professional negligence may be begun unless the defendant has been given at least sixty (60) days’ prior written notice of the intention to begin the action.” Miss.Code Ann. *540 § 15-1-36(15). Thus, Section 11-46-11(1) requires that when suing a health care provider, a plaintiff must give the healthcare provider written notice of his or her intention to begin an action for professional negligence sixty days prior to initiating an action on a claim for injury. Miss.Code Ann. § 15-1-36(15).
¶ 93. I have previously expressed my disagreement with this Court’s strict construction and application of the sixty-day-notice requirement in Section 15-1-36(15) in Arceo v. Tolliver, 949 So.2d 691, 698-704 (Miss.2006) (Graves, J., dissenting), and I hereby incorporate those arguments. As I stated in that opinion, it is unconstitutional for this Court to strictly enforce the requirement that plaintiffs filing lawsuits against a particular class of defendants— medical providers — provide written notice of their claims and then to dismiss their claims, regardless of viability, if they fail to wait sixty days before filing a complaint. See Miss. Const, art. 3, § 24; see also Areeo, 949 So.2d at 698-704 (Graves, J., dissenting).
¶ 94. For all the reasons set out above, I respectfully dissent.
KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION. RANDOLPH, J., JOINS THIS OPINION IN PART.

. Rule 4.2 states: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.” Miss. R. Prof'l Conduct 4.2.

. Although Section 11-46-11 was revised in 1999, the language regarding the ninety-day-notice requirement remains unaltered from the pre-1999 version of Section 11-46-11. See Miss.Code Ann. § 11-46-11 (Rev.1998).